# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:20-CV-00264-HEA |
| | ) |
| WORLD WRECKING & SCRAP SALVAGE SERVICES, INC.; ACTIVE HOLDINGS GROUP d/b/a GENCORP SERVICES, LLC; ROSETTA RICKS; SHAUN RICKS; DEMETRIUS RICKS; CHERHETA RICKS; BEN RICKS, JR.; SHANDOSIA CRISS; ENIYA HALE; JOEY HALE, JR.; and BARBARA POPE, | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS ENIYA HALE, JOEY HALE, JR., AND BARBARA POPE'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO STAY PLAINTIFF'S DECLARATORY JUDGMENT**

NOW COMES Plaintiff, NAUTILUS INSURANCE COMPANY ("Nautilus"), by and through its undersigned attorneys, and files its Response in Opposition to ENIYA HALE, JOEY HALE, JR., AND BARBARA POPE's (hereinafter, collectively "Defendants") Motion to Dismiss or in the Alternative Motion to Stay Plaintiff's Declaratory Judgment. In support thereof, Plaintiff states as follows:

## I.  INTRODUCTION

This is an insurance coverage action stemming from two underlying wrongful death petitions brought by relatives of Joey Hale and Ben Ricks, Sr. against Nautilus' insured, World Wrecking and Scrap Salvage Services, Inc. ("World Wrecking") (hereinafter referred to collectively as the "Underlying Lawsuits"). The Underlying Lawsuits seek damages for the fatal

injuries that Joey Hale and Ben Ricks, Sr. allegedly sustained while employed by World Wrecking as construction workers.

Nautilus filed a Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure seeking a finding that it has no duty to defend or indemnify World Wrecking in the Underlying Lawsuits under an insurance policy that Nautilus issued to World Wrecking ("Complaint"). This Court has proper subject matter jurisdiction pursuant to 28 U.S.C. §1332(a), and venue is also proper in this Court. *See Doc. #1*, ¶¶4-17.

Defendants Eniya Hale, Joey Hale, Jr., and Barbara Pope (the "*Hale* Defendants") filed a Motion to Dismiss or in the Alternative a Motion to Stay this action arguing that the Court does not have and/or should not exercise jurisdiction over the Complaint. *Doc. #48, 49*.  First, the *Hale* Defendants assert that the Court should exercise its discretion pursuant to *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) to refrain from hearing this Declaratory Judgment action under the "Abstention Doctrine."  Alternatively, the *Hale* Defendants ask the Court to exercise its discretion under *Scottsdale v. Detco Indus. Inc.*, 426 F.3d 994, 998 (8th Cir. 2005) to stay this action.  Both of these requests should be denied.

None of the other defendants, including Nautilus' insured, have questioned the Court's jurisdiction, nor argued that the Court should "abstain" or "stay" the coverage action. As discussed below, Nautilus not only seeks a declaration as to its duty to indemnify World Wrecking, but also its *duty to defend* the Underlying Lawsuits.  As such, the issues are ripe and justiciable for this Court to decide.  Further, the relevant factors the District Court should consider in weighing whether to exercise jurisdiction over the Complaint favor retaining jurisdiction.  Resolving the coverage issues in this case will not require this Court to make any determinations on ultimate facts or liability issues that are "at issue" in the Underlying Lawsuits.  Furthermore, the coverage

issues presented will not be addressed in the Underlying Lawsuits (to which Nautilus is not a party) and may be decided as a matter of law based on the terms of the Nautilus Policy and Underlying Lawsuits. For these reasons, Defendants' Motion should be denied.

## II. FACTUAL BACKGROUND

This insurance matter arises out of two Petitions for Wrongful Death filed against World Wrecking styled (1) *Eniya Hale et al. v. Active Holdings Group d/b/a Gencorp Services et al.*, cause number 1922-CC10745, and (2) *Rosetta Ricks, et. al. v. Active Holdings Group d/b/a Gencorp Services, LLC et al.*, cause number 1922-CC11419, both of which are pending in the Circuit Court of the City of St. Louis, State of Missouri (hereinafter, collectively the "Underlying Lawsuits"). The Underlying Lawsuits contain materially identical allegations and allege that on June 4, 2018, Mr. Hale and Mr. Ricks were construction workers employed by World Wrecking to perform demolition work at a property located at 1501 Washington Avenue, St. Louis, Missouri 63103 ("the Property"). *See Doc. #1*, ¶¶ 20-22. The Underlying Lawsuits allege that on June 4, 2018, a workbasket occupied by Mr. Hale and Mr. Ricks fell down an elevator shaft, causing Mr. Hale and Mr. Ricks to sustain fatal injuries. *Doc. #1*, ¶ 25. The Underlying Lawsuits, respectively, include a single cause of action against World Wrecking sounding in "conduct with the specific purpose of injury." *Doc. #1*, ¶ 26. The underlying petitioners allege that Mr. Hale and Mr. Ricks were employees of World Wrecking and that World Wrecking breached its duties to Mr. Hale and Mr. Ricks. *Id.*

Nautilus issued a commercial general liability insurance policy to World Wrecking under policy No. NN924824 for the policy period of May 14, 2018 to May 14, 2019 (the "Nautilus Policy"). *Doc. #1-3*. World Wrecking subsequently tendered the Underlying Lawsuits to Nautilus for defense and indemnification under the Nautilus Policy. The Nautilus Policy generally provides

coverage for an insured's liability for damages because of "bodily injury" caused by an "occurrence" (i.e., accident) that take place during the policy period. *Id.* at pg. 12. The Nautilus Policy, however, contains several exclusions that bar coverage, including one entitled: "Exclusion - Injury to Employees, Contractors, Volunteers And Other Workers" Exclusion (the "Injury to Workers Exclusion"). The Injury to Workers Exclusion bars coverage for "bodily injury" to "'[e]mployees', 'leased workers', 'temporary workers', 'volunteer workers', statutory 'employees', casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured." *Id.* at pg. 36. The Injury to Workers Exclusion also bars coverage for any bodily injury sustained by "[a]ny insured's contractors', subcontractors', or independent contractors' 'employees', 'leased workers', 'temporary workers', 'volunteer workers', statutory 'employees', casual workers, seasonal workers, contractors, subcontractors, or independent contractors," that "aris[es] out of and is in the course of…[e]mployment by any insured…or…[d]irectly or indirectly performing duties related to the conduct of any insured's business." *Id.*[1]

### III. STANDARD OF REVIEW

Defendants' Motion argues that the District Court lacks jurisdiction over this coverage action and, therefore, was brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion to dismiss contends that a complaint fails to allege facts upon which subject matter jurisdiction can be based. *Jessie v. Potter*, 516 F.3d 709, 714 (8th Cir. 2008). The plaintiff bears the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence. *OnePoint Solutions, LLC v. Borchert,* 486 F.3d 342, 347 (8th Cir.2007). "In order

---

[1] The Nautilus Policy also includes exclusions for "expected or intended injury" (exclusion 2.a), injury to "contractors and subcontractors," and certain "wrecking, dismantling or salvage operations" which also apply to the Underlying Lawsuits. *See Doc. #1*, ¶¶45-55.

to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (internal citations omitted). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* (internal citations omitted).  "A district court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1)." *Harris v. P.A.M. Transp., Inc.,* 339 F.3d 635, 637 n. 4 (8th Cir. 2003).

## IV.   ARGUMENT

**A.   The District Court Should Exercise Its Jurisdiction Over Nautilus' Complaint for Declaratory Judgment.**

The *Hale* Defendants erroneously argue that the Underlying Lawsuits are "parallel proceedings" with this Declaratory Judgment action such that the District Court should dismiss or stay this action pending adjudication of the Underlying Lawsuits.  The *Hale* Defendants' claim that the underlying tort actions and this coverage suit are parallel proceedings because both World Wrecking's liability in the Underlying Lawsuits and Nautilus' obligations under the Nautilus Policy can be resolved by deciding many of the same issues. In addition, defendants argue that discovery in the Underlying Lawsuits will resolve most of the exclusions that Nautilus contends apply in this action and that these "identical issues" favor abstaining from hearing this Declaratory Judgment action.  Alternatively, the *Hale* Defendants argue the District Court should nonetheless abstain from hearing this Declaratory Judgment action pursuant to *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005).  Defendants' arguments fail to raise a colorable

basis for this District Court to decline jurisdiction or decide Nautilus' declaratory complaint.  As such, Nautilus respectively requests that the District Court deny the *Hale* Defendants' motion.

### 1. Nautilus' Declaratory Judgment Action and the Underlying Lawsuits are not Parallel Proceedings

Certainly, federal district courts have discretion in determining whether to entertain an action for declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288-89 (1995).  The scope of a district court's discretion to abstain from exercising jurisdiction under the Declaratory Judgment Act depends upon whether a "parallel" state court action exists. *Amco Ins. Co. v. Columbia Maint. Co.*, No. 4:19-CV-02202-SRC, 2020 WL 1170232, at *2 (E.D. Mo. Mar. 11, 2020) (citing *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005)). "If so, a district court enjoys broad discretion, guided by judicial economy." *Id.* "If not, district courts have more limited discretion to abstain." *Id.* "Thus, the threshold question for determining whether the Court should dismiss or stay this case is 'whether there are parallel proceedings in state court that present an opportunity for the same issues to be addressed.'" *Atain Specialty Ins. Co. v. Frank*, 2013 WL 12145863, at *3 (W.D. Mo. Mar. 25, 2013) (internal citation omitted).

Suits are parallel if "substantially the same parties litigate substantially the same issues in different forums." *Scottsdale Ins. Co.*, 426 F.3d at 997 (citations omitted).  Put another way, "state proceedings are parallel if they involve the same parties or if the same parties may be subject to the state action and if the state action is likely to fully and 'satisfactorily' resolve the dispute or uncertainty at the heart of the federal declaratory judgment action." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013).

In *Scottsdale Ins. Co.*, *supra*, Scottsdale Insurance Company ("Scottsdale") filed a declaratory judgment action in federal court seeking a finding that it had no duty to defend or indemnify its insured, Detco Industries, Inc. ("Detco"), in multiple state court lawsuits arising out

6

of a fire and explosion at Detco's facility. In finding that the declaratory action and the underlying lawsuits were not parallel proceedings, the Court reasoned that the state court actions did not involve "substantially the same issues" as the declaratory judgment action, because the "suits in state court involve issues regarding Detco's liability relating to the January 2005 fire and explosion at its facility, whereas the federal suit between Detco and Scottsdale involve matters of insurance coverage." *Id.* The Eighth Circuit went on to say that "[a]lthough, as the district court noted, the issues in each proceeding may depend on some of the same facts, that circumstance does not compel a conclusion that the suits are parallel, for the state court proceedings involve parties, arguments, and issues different from those in the federal court proceedings." *Id.* Therefore, the court concluded that the coverage action and the underlying lawsuit were not parallel proceedings for purposes of the Abstention Doctrine. *Id.; see also Lexington Ins. Co.*, 721 F.3d at 971 (E&O insurer's federal declaratory judgment action against insured abstractor was not a parallel action with title insurer's state court actions against abstractor); *Amco Ins. Co.*, 2020 WL 1170232, at *2 (finding that an underlying arbitration and a federal declaratory judgment action were not parallel proceedings because the insurers were not parties to the arbitration and therefore any judgment from the arbitrator as to insurance coverage would not bind the insurers).

As in *Scottsdale Ins. Co.*, *supra*, the Underlying Lawsuits do not involve "substantially the same issues" as this Declaratory Judgment action.  The Underlying Lawsuits involve issues regarding World Wrecking's tort liability to the decedents and their relatives, whereas this action involves matters of insurance coverage and Nautilus' obligation to defend or indemnify World Wrecking for the Underlying Lawsuits.  The Underlying Lawsuits allege that World Wrecking intentionally caused the decedents' injuries in violation of the Occupational Safety and Health Act of 1970 ("OSHA"). *See e.g. Doc. #1-1*, ¶¶105-112. Thus, the Underlying Lawsuits will involve an

7

adjudication of whether World Wrecking's alleged acts or omissions breached a duty of care to the decedents, and whether World Wrecking proximately caused the injuries and damages alleged. In contrast, this coverage action involves an interpretation of an insurance contract and determination of whether certain exclusions and conditions in the Nautilus Policy preclude coverage by comparing the terms of the Nautilus Policy to the *allegations* of the Underlying Lawsuits. While some of the alleged facts may overlap, the issues in this coverage action and the Underlying Lawsuits are not "substantially similar" to warrant abstention of this action. *Scottsdale Ins. Co.*, 426 F.3d at 997 (although "the issues in each proceeding may depend on some of the same facts, that circumstance does not compel a conclusion that the suits are parallel.").

Moreover, Nautilus is not a party to the Underlying Lawsuits, and the coverage issues and contractual interpretation of Nautilus' Policy will not be determined in the underlying cases. Accordingly, Nautilus is not a participant in the underlying tort suits and any judgment entered in the Underlying Lawsuits would not be binding on Nautilus as to insurance coverage for the Underlying Lawsuits. *Amco Ins. Co.*, 2020 WL 1170232, at *2. As the tort suits involve parties, facts, and legal issues different from those in this case, this declaratory judgment action is not a "parallel proceeding" to the Underlying Lawsuits. As such, Defendants' Motion to Dismiss should be denied.

### 2. The Six-Factor *Scottsdale* Test Favors Retaining Jurisdiction Over Nautilus' Declaratory Judgment Action

In determining whether to proceed with a federal declaratory judgment action in the absence of a parallel state action, six factors guide the District Court's analysis: (1) whether the declaration being sought will serve a useful purpose in clarifying and settling the legal relations at issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength of the state's

8

interest in having the issues raised in the federal declaratory judgment action decided in state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action in pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable. *Scottsdale Ins. Co.*, 426 F.3d at 998. Careful consideration of these factors favors the Court's retention of jurisdiction over this case.

Here, the first and second factors weigh in favor of retaining jurisdiction, where "[t]he declaratory judgment would 'clarify and settle' the legal relations at issue and would afford relief from the 'uncertainty, insecurity, and controversy' between [Nautilus] and [the insured]." *Id.*, at 999; *see also Lexington Ins. Co.*, 721 F.3d at 971 (noting that in regard to the first, second, and fourth factors, "[r]esolution of coverage issues in state court was by no means certain and the presence of multiple unrelated issues made *efficient* resolution even less certain. In contrast, the coverage issues regarding the E & O policy were front and center in the federal case"). Nautilus is asking the District Court to decide both its duty to defend and indemnify World Wrecking in connection with the Underlying Lawsuits. In particular, Nautilus contends that the injuries alleged in the underlying actions fall within one or more of the exclusions in the Nautilus Policy, which World Wrecking disputes. The declaratory action will resolve the coverage dispute between Nautilus and World Wrecking and providing clarity to all parties regarding their respective rights and obligations under the Nautilus Policy and availability of insurance proceeds (if any) for the Underlying Lawsuits. The likelihood that a coverage determination will clarify and settle the

9

contractual obligations and rights between Nautilus and its insured strongly favors retaining jurisdiction over this action.

As to the third factor, Missouri courts have held "the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in state courts" is neutral (at best). *Amco Ins. Co.*, 2020 WL 1170232, at *3. In other words, the state court does not have a special interest in resolving routine insurance policy construction disputes and issues of Missouri contract law that are commonly before the District Court. *Id.* (citing *State Farm Fire & Cas. Co. v. Pit Stop Bar & Grill, LLC*, 2015 WL 4663492 (E.D. Mo. Aug. 6, 2015). Like *Amco Ins. Co.*, Nautilus' Declaratory Judgment Action involves a routine insurance-policy construction dispute, which Missouri courts have no special interest in deciding. Accordingly, this factor also favors Nautilus, or at a minimum is neutral.

The fourth factor of whether the issues raised in the federal action can more efficiently be resolved in the state court where the tort action is pending, also favors Nautilus. As the Eighth Circuit has noted, "in the absence of a pending parallel state court proceeding, judicial economy would be best served by deciding [the] action initially in the federal court" because it is less likely that the claims of all parties in interest can satisfactorily be adjudicated in the state court proceeding. *Scottsdale Ins. Co.*, 426 F.3d at 999. Here, there is no dispute that Nautilus is not a party to the Underlying Lawsuits and cannot be joined to it. *See Desmond v. Am. Ins. Co.*, 786 S.W.2d 144, 145 (Mo. Ct. App. 1989) ("an injured party cannot proceed in a direct action against an insurance company providing liability coverage for an insured who allegedly caused the harm sustained by the claimant"). Further, the contractual coverage issue in this action will not be decided in the Underlying Lawsuits. As Nautilus is not a party to the Underlying Lawsuits, and a coverage determination as to Nautilus' rights and obligations under the Nautilus Policy will not be

10

decided in the underlying tort litigation, judicial economy is better served by deciding the coverage issues in this action. Thus, the fourth factor also favors Nautilus.

The fifth factor likewise supports this Court's retention of jurisdiction. The fifth factor considers whether allowing this federal action to proceed would result in unnecessary entanglement between the federal and state court systems. The *Hale* Defendants argue that "[i]n order to resolve any of the issues presented in Plaintiff's Declaratory Judgment certain facts will need to be discovered through investigation, and interrogatories; all of which is currently being conducted in the State Court Action." *Doc. #49*, pg. 3. For example, the *Hale* Defendants argue that the determination of whether the Underlying Lawsuits allege an "occurrence" (i.e., an accident) or whether the Injury to Workers Exclusion bars coverage can only be determined after all the facts and circumstances have been fully discovered in the Underlying Lawsuits. This is not accurate.

Here, Nautilus is asking the District Court to decide its contractual obligation on both its duty to defend and indemnify World Wrecking in connection with the Underlying Lawsuits. Under Missouri law, an insurer's duty to defend "is ascertained by comparing the allegations made in the underlying complaint to the policy language." *See Wolfe Automotive Group, LLC v. Universal Underwriters Ins. Co.*, 808 F.3d 729, 732 (8th Cir. 2015) (citing *Piatt v. Indiana Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. 2015). Accordingly, an insurer has no duty to defend where the petition, on its face, alleges facts that fail to bring the case within the policy's coverage. *Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 42 (Mo. Ct. App. 2007). Further, where there is no duty to defend, there can be no duty to indemnify. *Wolfe Automotive Group, LLC*, 808 F.3d at 732 (citations omitted).

Nautilus avers that coverage for the Underlying Lawsuits is excluded by, among other reasons, the Injury to Workers Exclusion.  That exclusion bars coverage for "bodily injury" to World Wrecking's "employees" where the injury arises out of and in the course of employment by World Wrecking or directly or indirectly performing duties related to the conduct of World Wrecking's business.   The petitions in the Underlying Lawsuits allege that the decedents were "employees" of World Wrecking and performing duties related to World Wrecking's demolition business at the time of the accident.  On their face, the allegations of the complaint when compared with the policy language plainly demonstrates no coverage for the Underlying Lawsuits.

To the extent the *Hale* Defendants argue that their own pleadings are incorrect or that decedent's employment status is an issue in the underlying case, the District Court need not engage in factual determinations regarding these issues to resolve the declaratory action.  The Injury to Workers Exclusion, for example, not only applies to bodily injury to "employees" of World Wrecking, but also to a larger classification of workers including "leased workers," "temporary workers," "volunteer workers," "statutory 'employees,'" casual workers, seasonal workers, contractors, subcontractors, or independent contractors of World Wrecking.[2]  *Doc #1-3*, pg. 36. Likewise, the policy's "Contractors and Subcontractors" Exclusion precludes coverage for "bodily injury" arising out of work performed by any contractor or subcontractor whether hired by or on behalf of World Wrecking or any insured, or any acts or omission in connection with the general supervision of such work.  *Doc. #1-3*, pg. 45.  Accordingly, as long as the decedents fall within any one of these worker classifications, the exclusion applies.

---

[2] The "Injury to Workers" Exclusion also bars coverage for  bodily injury to "[a]ny insured's contractors', subcontractors', or independent contractors' 'employees', 'leased workers', 'temporary workers', 'volunteer workers', statutory 'employees', casual workers, seasonal workers, contractors, subcontractors, or independent contractors," that "aris[es] out of and is in the course of . . . [e]mployment by any insured . . . or . . . [d]irectly or indirectly performing duties related to the conduct of any insured's business." Doc. #1-3, pg.

12

Application of these exclusions can be decided as a matter of law and, thus, the determination of Nautilus' duties to World Wrecking in the Underlying Lawsuits will not require this Court to resolve factual questions at all. *See American Family Mutual Ins. Co. v. Tickle*, 99 S.W.3d 25, 29 (Mo. Ct. App. 2003) (applying "employee exclusion" to allegations and finding no duty to defend); *see also Piatt v. Ind. Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. 2015) (holding no duty to defend under employer's liability exclusion).[3] This Court need only compare what Defendants have alleged in the state court action with the language of the Nautilus Policy. Put another way, the Court will not be required to make independent findings as to what actually occurred on the date of the unfortunate incident; rather, the Court need only decide whether the allegations in the underlying petitions bring the factual scenario within the scope of the insurance policy's exclusions. This does not require the District Court to make determinations of state law, decide whether World Wrecking is liable in the underlying suits, or entangle itself with in the underlying suits. The duty to defend analysis is a matter of contract interpretation, nothing more. Thus, the danger of "entanglement" between the coverage action and the state court action is minimal and "[a]ny overlapping issues of fact are insignificant." *Scottsdale Ins. Co.*, 426 F.3d at 999. Accordingly, this factor also favors Nautilus.

Finally, Nautilus has not used this declaratory action as a "procedural fencing" device. Defendants have not offered any actual, let alone convincing, evidence that Nautilus has engaged in such tactics merely by filing this coverage action in the District Court. Procedural fencing

---

[3] Moreover, the **only** claim against World Wrecking in the Underlying Lawsuits is based on its "conduct with specific purpose of injury" alleging solely intentional injuries. Where the underlying lawsuit against the insured is premised solely on intentional conduct, the allegations fail to allege an "occurrence" or are otherwise precluded by the "expected or intended injury" exclusion. *See e.g. D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 905 (Mo. 2010) ("The determinative inquiry into whether there was an 'occurrence' or 'accident' is whether the insured foresaw or expected the injury or damages").

occurs when a party has filed in "another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable." *Scottsdale,* 426 F.3d at 998. Nautilus has not raced to file this action to achieve a favorable forum, as Nautilus filed this declaratory action on February 14, 2020, while the Underlying Lawsuits were filed on July 17, 2019, and September 4, 2019. *See e.g. Lexington Ins. Co.*, 721 F.3d at 972 (finding that the insurer had not engaged in procedural fencing where the insurer filed the declaratory action several months after the underlying lawsuits were filed).  Moreover, the scope of coverage under the Nautilus Policy presented in this action is not at issue in the Underlying Lawsuits, thus there has been no "race" for a more favorable forum to decide issues common to the underlying actions.  There is a live and serious question about whether the Nautilus Policy provides coverage for World Wrecking for the claims asserted against it in the Underlying Lawsuits.  Accordingly, Nautilus has appropriately sought a declaratory judgment in federal court to clarify and settle its contractual duties to the insured.

Defendants argue that Nautilus has engaged in procedural fencing merely because it seeks a determination of its *duty to indemnify* World Wrecking for the Underlying Lawsuits.  This alone, however, is insufficient to warrant abstention.  Although it is sometimes true that the duty to indemnify may depend on resolution of facts necessary to a judgment in the underlying action, no such fact finding is necessary if there is no duty to defend in the first instance because the allegations, even when taken as true, would fall outside the policy's coverage. *See e.g. Wolfe Automotive Group, LLC*, 808 F.3d at 732. In other words, because a court may be able to resolve the duty to indemnify after deciding the duty to defend, and without reaching ultimate factual determinations, there is insufficient entanglement to warrant a dismissal of the declaratory judgment proceeding. *Id*.

To be clear, Nautilus is not asking the Court to make factual determinations that are binding on the parties to the Underlying Lawsuits. As discussed above, the District Court is routinely asked to render a judgment on the carrier's duty to defend (and potentially duty to indemnify), without over-stepping its authority or prejudicing parties to the underlying tort action. That is all Nautilus is asking the Court to do here, which does not support the inference that Nautilus is "forum shopping" or "procedural fencing." Moreover, there is no question that diversity jurisdiction is proper, and no dispute that venue in this District is appropriate based on the location of the underlying incident and domicile of the Defendants.

Finally, Defendants argue that Nautilus has engaged in procedural fencing because it has named the plaintiffs in the Underlying Lawsuits as defendants to this coverage action.[4] While Defendants cite case law holding that a tort plaintiff is not permitted to intervene in an insurer's declaratory action *as a matter of right*, Defendants' argument ignores the fact that Nautilus was required to name the underlying petitioners as defendants in order to bind them to any judgment entered by this Court. *Wilkes v. St. Paul Fire & Marine Ins. Co.*, 92 S.W.3d 116, 122 (Mo. Ct. App. 2002) (plaintiffs in an underlying lawsuit were not bound by a judgment in an insurer's declaratory judgment actions where the plaintiffs were not named as parties in the declaratory action). As such, this factor does not support declining jurisdiction over the Nautilus Complaint, and instead favors Nautilus.

For the foregoing reasons, each of the six factors in *Scottsdale Ins. Co.* favor Nautilus and militate against declining jurisdiction in this case. Accordingly, Defendants' Rule 12(b)(1) Motion to Dismiss or in the Alternative Motion to Stay should be denied.

---

[4] Additionally, Nautilus offered to dismiss the underlying petitioners from this lawsuit if they agreed to be bound by any judgment rendered by the Court on coverage. The underlying petitioners declined the offer.

## CONCLUSION

Nautilus seeks a declaration that it has no duty to defend, and correspondingly, no duty to indemnify World Wrecking against the allegations in the Underlying Lawsuits. While World Wrecking may have viable, and even strong, defenses to liability in the Underlying Lawsuits, Nautilus is entitled to a declaration of its rights and obligations under the Nautilus Policy in this Court. This common exercise of the District Court's jurisdiction to hear and decide declaratory judgment actions regarding an insurer's duty to defend and indemnify its insured does not invade the province of the underlying state court or impermissibly interfere with the Underlying Lawsuits. Exercise of the Court's jurisdiction is proper in this case and will materially and efficiently advance the interests of the parties as respects those coverage issues raised in Nautilus's Complaint. As shown above, the relevant factors to decide whether the Court should exercise jurisdiction weigh heavily in favor of maintaining jurisdiction over the Complaint. Likewise, as the District Court is not being asked to decide any determinative issues of fact in the Underlying Lawsuits, a stay is equally unnecessary. The *Hale* Defendants present no basis to dismiss the Complaint for lack of subject matter jurisdiction, and therefore, Defendants' Rule 12(b)(1) Motion to Dismiss should be denied.

Dated: September 4, 2020                      Respectfully submitted,

                                                                  HESSE MARTONE, P.C.

By:     */s/ Josephine Abshier*
        Josephine P. Abshier, #56708
        530 Maryville Centre Drive, Ste. 250
        St. Louis, MO 63141
        (314) 862-0300 – Telephone
        (314) 862-7010 – Facsimile
        josephineabshier@hessemartone.com

        Dana A. Rice (admitted Pro Hac Vice)
        Jason Taylor (admitted Pro Hac Vice)

Traub Lieberman Straus & Shrewsberry LLP
303 West Madison Street, Ste. 1200
Chicago, IL 60606
(312) 332-3900 – Telephone
drice@tlsslaw.com

ATTORNEYS FOR NAUTILUS INSURANCE COMPANY

# CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was filed electronically with the Clerk of the Court and served by operation of the Court's electronic filing system, this 4th day of September, 2020, to all the attorneys on record.

       /s/ Josephine P. Abshier

John Kilo, #21674
Timothy Callahan, #56749
5840 Oakland Ave.
St. Louis, Missouri 63110
(314) 647-8910 Telephone
(314) 647-3134 Facsimile
jkilo@kiloflynn.com
tcallahan@kiloflynn.com

*Attorneys for World Wrecking & Scrap Salvage Services, Inc.*

Brent E. Labovitz, #61468
Kolker and Labovitz
7700 Bonhomme Ave., Ste. 350
Clayton, Missouri 63105
(314) 727-4529 Telephone
(314) 727-8529 Facsimile
bel@kolkerlawfirm.com

*Attorneys for, Eniya Hale, Joey Hale, Jr., and Barbara Pope*

Jermaine Wooten, #59338
The Legal Solution Group, LLC
10250 Halls Ferry
St. Louis, Missouri 63136
(314) 736-5770 Telephone
(314) 736-5772 Facsimile
jwooten@lsgstl.com

*Attorney for Shaun Ricks, Demetrius Ricks, Cherheta Ricks, Ben Ricks, Jr., Rosetta Ricks, Shandosia Criss*