**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20CV264 HEA |
| ) | |
| WORLD WRECKING & SCRAP ) | |
| SALVAGE SERVICES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION, MEMORANDUM AND ORDER**

The Plaintiff in this declaratory judgment action, Nautilus Insurance

Company of America ("Nautilus,") seeks a declaration that a policy of insurance it

issued does not cover two underlying state court lawsuits against its insureds,

World Wrecking & Scrap Salvage, Inc. ("World Wrecking") and Active Holdings

Group d/b/a Gencorp Services ("Gencorp") (collectively, "Insured Defendants").

Defendants Eniya Hale, Joey Hale, Jr., and Barbara Hope (collectively, the "Hale

Defendants") filed the instant Motion to Dismiss [Doc. No. 48] requesting that the

Court abstain from hearing and dismiss Nautilus' declaratory judgment action or

stay Nautilus' declaratory judgment action pending the outcome of the state court

lawsuits. Nautilus opposes the Motion. For the reasons set forth below, the Motion

to Dismiss will be denied.

**Facts and Background**

For the purpose of this motion to dismiss, the plaintiff's allegations are taken as true. Plaintiff Nautilus alleges:

On July 17, 2019, the Hale Defendants filed a petition for wrongful death of their relative Joey Hale in the Circuit Court for the City of St. Louis, Missouri (the "Hale Action") against the Insured Defendants and others. On September 4, 2019, Rosetta Ricks, Shaun Ricks, Demetrius Ricks, Cherheta Ricks, Ben Ricks, Jr., and Shandosia Criss (collectively, the "Ricks Defendants") filed a petition for wrongful death of their relative Ben Ricks Sr. in the Circuit Court for the City of St. Louis, Missouri (the "Ricks Action") against the Insured Defendants and others.

The allegations in the Hale Action and the Ricks Action (collectively, the "State Court Actions") are largely identical. Both the Hale Defendants and Ricks Defendants (all collectively, the "State Court Petitioners") allege that on June 4, 2018, their respective relative was a construction worker employed by World Wrecking to perform demolition inside a building's freight elevator shaft on a property located at 1501 Washington Avenue, St. Louis, Missouri 63103 ("The Property.") The State Court Petitioners allege that Gencorp was the general contractor for demolition work at the Property.

The State Court Petitioners allege that Joey Hale and Ben Ricks, Sr. (collectively, "Decedents") were occupying a single point adjustable work basket scaffold located in freight elevator shaft #1 at the time of the accident. The State

Court Petitioners allege that the work basket was being hoisted up the elevator shaft by a motorized wire rope pulley system when the rope failed, causing the work basket occupied by Decedents to fall down the elevator shaft. As a result of the fall down the shaft, Decedents sustained physical and emotional injuries, and ultimately died of their injuries.

Each of the State Court Actions include a single cause of action against World Wrecking sounding in "conduct with the specific purpose of injury." The State Court Petitioners allege that Decedents were employees of World Wrecking and that World Wrecking breached its duties to Decedents by failing to prevent exposure to falling hazards during demolition of the Property; failing to protect from the hazard of falling; failing to ensure that either ground fault circuit interrupters or an assured equipment grounding conductor program was used; failing to ensure that the wire rope support cable, clips and structural integrity of the work basket were properly inspected; failing to ensure adequate personal arrest fall system or guardrail system was provided to Decedents; permitting Decedents to occupy a work basket that it knew or reasonably could have known was in a dangerous and defective condition; failing to ensure Decedents had received proper fall hazard training; failing to conduct an inspection of the wire cable rope on the work basket scaffold; and permitting the wire cable rope on the work basket to be in dangerous proximity to electrical wiring that was not properly grounded. The

State Court Petitioners allege that Gencorp was negligent in failing to provide safe equipment to the Decedents and failing to prevent exposure to fall hazards during demolition. They also allege that the acts of World Wrecking were intentional, and that World Wrecking acted with the specific purpose of injuring Decedents. The State Court Actions, respectively, seek to recover all damages, including funeral expenses, pain and suffering experienced by the Decedents, costs incurred, and punitive damages.

On August 30, 2018, Gencorp tendered its defense and indemnity to World Wrecking pursuant to the terms and conditions of an unsigned, draft AIA Contractor and Subcontractor Agreement (the "Gencorp Demand"). The AIA Contractor and Subcontractor Agreement between Gencorp and World Wrecking that is the basis of the Gencorp Demand is unsigned by either party, purports to be a "Draft" of the parties' agreement and is missing exhibits referenced in the agreement. The Gencorp Demand claims that World Wrecking is obligated to defend, indemnify and provide insurance for Gencorp for the claims made by the Estates of Joey Hale and Ben Ricks, Sr. under the terms of the AIA Contractor and Subcontractor Agreement. The Gencorp Demand also alleges that Nautilus is required to provide Gencorp with liability insurance for the Hale and Ricks claims as an "additional insured" under the Nautilus policy issued to World Wrecking.

4

Nautilus issued a commercial general liability insurance policy to World Wrecking, policy No. NN924824, for the policy period of May 14, 2018, to May 14, 2019 (the "Policy"). The Policy provides $1,000,000 of liability coverage for each covered "occurrence," subject to a general aggregate limit of $2,000,000, and a $500 deductible for bodily injury and property damage liability combined. Gencorp is not identified as a Named Insured, insured, or "additional insured" in the Policy Declarations, endorsements or policy attachments, or otherwise. Further, the Policy does not include any "blanket" additional insured or similar endorsement that provides coverage to Gencorp as an "additional insured" or "insured" for the underlying lawsuits.

Section I, Coverages, Coverage A. "Bodily Injury and Property Damage Liability," of the Policy provides, in relevant part, as follows:

**SECTION I - COVERAGES**
**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement**
  a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. […]
  b. This insurance applies to "bodily injury" and "property damage" only if:
  (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

> (2) The "bodily injury" or "property damage" occurs during the
> policy period; and
>
>        * * *

Section V – Definitions, of the Policy defines the terms "bodily injury" and

"occurrence" as follows:

> **SECTION V – DEFINITIONS**
> 3. "Bodily injury" means bodily injury, sickness or disease sustained
>    by a person, including death resulting from any of these at any
>    time.
> 13. "Occurrence" means an accident, including continuous or repeated
>     exposure to substantially the same general harmful conditions.

The Policy also includes an exclusion 2.a "Expected Or Intended Injury", that

provides that this insurance does not apply to:

> **a.  Expected Or Intended Injury**
> "Bodily injury" or "property damage" expected or intended from
> the standpoint of the insured. This exclusion does not apply to
> "bodily injury" resulting from the use of reasonable force to
> protect persons or property.

The State Court Actions allege that World Wrecking acted intentionally and

that it acted with the specific purpose of injuring Decedents by failing to ensure

adequate protections and that the work basket scaffold was free from dangerous or

defective conditions. According to Nautilus, the State Court Actions allege solely

intentional, not negligent, acts against World Wrecking, and therefore, fail to

allege an "occurrence" as defined by the Policy. Similarly, exclusion 2.a. precludes

coverage for "bodily injury" expected or intended from the standpoint of World

Wrecking. Nautilus contends that to the extent that the State Court Actions satisfy the Insuring Agreement of the Policy, exclusion 2.a. bars coverage.

The Policy also contains form L205 (11/10), entitled Exclusion – Injury to Employees, Contractors, Volunteers and Other Workers, (hereinafter "Injury to Employees Exclusion") which states as follows:

**EXCLUSION - INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND OTHER WORKERS**
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
A. Exclusion **e. Employer's Liability** of **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:
This insurance does not apply to:
  **e. Injury to Employees, Contractors, Volunteers and Other Workers**
   "Bodily injury" to:
   (1) "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or
   (2) Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors
   arising out of and in the course of:
    (a) Employment by any insured; or
    (b) Directly or indirectly performing duties related to the conduct of any insured's business; or
   (3) The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractors, or independent contractor arising out of Paragraph **(1)** or **(2)** above.
   This exclusion applies:

7

(1) Regardless of where the:
    (a) Services are performed; or
    (b) "Bodily injury" occurs; and
(2) Whether any insured may be liable as an employer or in any other capacity; and
(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. Exclusion **a. Any Insured** of **2. Exclusions** of **Section I - Coverage C - Medical Payments** is **replaced** by the following:

    We will not pay expenses for "bodily injury":

      a. **Any Insured**
        To any insured.

All other terms and conditions of this policy remain unchanged.

The Policy defines the terms "employee," "leased worker," "temporary worker", and "volunteer worker" as follows:

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a temporary worker.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

The Injury to Employees Exclusion bars coverage for, among other things, bodily injury to (1) World Wrecking's "employees," "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors; or (2) any of

World Wrecking's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors, arising out of and in the course of (1) employment by World Wrecking or any insured; or (2) directly or indirectly performing duties related to the conduct of World Wrecking's business. The Injury to Employees Exclusion also applies to any claim or suit by the spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractor, or independent contractor arising out of the "bodily injury" referenced above.

The Policy also contains form L282 (07/10), entitled Exclusion-Contractors and Subcontractors, (hereinafter "Contractors or Subcontractors Exclusion") which states:

> EXCLUSION - CONTRACTORS AND SUBCONTRACTORS
> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> The following exclusion is added to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**, **Coverage B - Personal And Advertising Injury Liability** and **Coverage C - Medical Payments**:
> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work.

All other terms and conditions of this policy remain unchanged.

The State Court Actions allege that Decedents were construction workers employed by World Wrecking and that World Wrecking breached its duties to each of its employees to provide a place of employment and equipment that is free from recognized hazards. Nautilus contends that the Injury to Employees Exclusion and/or Contractors or Subcontractors Exclusion bar coverage.

The Policy contains an exclusion 2.d "Worker's Compensation And Similar Laws," which provides that this insurance does not apply to: "d. Workers Compensation And Similar Laws Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." Nautilus contends that Exclusion 2.d precludes coverage for any obligation of World Wrecking or any other insured under a workers' compensation, disability benefits, or unemployment compensation law or any similar law.

The Policy also contains form L266 (06/07), entitled Conditional Exclusions Wrecking, Dismantling or Salvage Operations, which states in relevant part:

> **CONDITIONAL EXCLUSIONS - WRECKING, DISMANTLING OR SALVAGE OPERATIONS**
> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> A. The following is **added** to **Section IV - Commercial General Liability Conditions**:

As a condition of this insurance, coverage must be purchased for wrecking or dismantling of buildings or structures or salvage operations and designated on the policy.

B. The following exclusions are **added** to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**:

1. This insurance does not apply to "bodily injury" or "property damage" caused directly or indirectly by:

a. Wrecking or dismantling of buildings or structures or salvage operations conducted by you or on your behalf;

b. The use of cranes, ball and chain or similar apparatus; or

c. The wrecking or dismantling of any building or structure that has an original height in excess of 30 feet or three stories, whichever is less.

However, this exclusion does not apply to "bodily injury" or "property damage" caused directly or indirectly by wrecking, dismantling or salvage operations that are included in the classification and project description designated on the policy and added to the policy by endorsement.

\* \* \*

The Policy also contains form L268 (04/13), entitled Wrecking, Dismantling or Salvage Contractors-Scheduled Project or Exclusion Exception, which states as follows:

### WRECKING, DISMANTLING OR SALVAGE CONTRACTORS-SCHEDULED PROJECT OR EXCLUSION EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

### PROJECT INFORMATION:

Location of Project: Various Locations within the States of Missouri & Illinois

Description of Project: Wrecking, dismantling or salvaging operations not consisting of the use of cranes, ball and chain or similar apparatus and not consisting of work on any building or structure that has an original height in excess of 30 feet or three stories.

Project Effective Dates of Coverage: From: 05/14/2018 to 05/14/2019

**PREMIUM COMPUTATION:**

* * *

**Total Premium** $ 3,647

EXCLUSIONS EXCEPTIONS:

* * *

Other: $ 3,647

**Total Exclusion Exception Premium** $ 3,647

**A. Project Information:**

The following is **added** to **Section I-Coverage A-Bodily Injury And Property Damage Liability**. This provision **replaces** and **supersedes** any provision to the contrary in this Coverage Part:

1. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage arising out of the wrecking, dismantling or salvage project shown in the Schedule of this endorsement under Project Information, for which a premium charge is shown.

2. This insurance applies to bodily injury and property damage only if the bodily injury or property damage occurs during the time period shown in the Schedule of this endorsement as the Project Effective Dates of Coverage.

3. Any bodily injury and property damage that occur before or after the dates shown in the Schedule of this endorsement are not covered.

4. The premium for the project is fully earned on the effective date shown in the Schedule of this endorsement and no refund will be made.

**B. Exclusion Exceptions**:

The following is **added** to **Section I-Coverage A-Bodily Injury And Property Damage Liability**. This provision **replaces** and **supersedes** any provision to the contrary in this Coverage Part:

We will pay those sum that the insured becomes legally obligated to pay as damages because of bodily injury or property damage arising out of the operations described in the Schedule of this endorsement under Exclusion Exceptions, for which a premium charge is shown.

Nautilus contends that Forms L266 and L268 operate to bar coverage for

any "bodily injury" arising out of World Wrecking's wrecking or dismantling of

12

any building or structure that has an original height in excess of 30 feet or three stories, whichever is less. Nautilus alleges that at the time of the accident Decedents were at the Property to perform demolition work inside the building's freight elevator. Additionally, at the time of the accident, Decedents were in a basket in an elevator shaft suspended six stories above the ground when something caused the basket to fall. As a result, both men fell six stories in the basket and died. Nautilus contends that accordingly, endorsements L266 and L268 in the Policy bar coverage.

The Nautilus Policy also includes an exclusion 2.b. (Contractual Liability) that provides that this insurance does not apply to:

> **b. Contractual Liability**
> "Bodily injury" or "property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>> (1) That the insured would have in the absence of the contract or agreement; or
>> (2) Assume in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. […]

The Nautilus Policy defines "insured contract," as amended, in relevant part as:

> f. Part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume tort liability of another party to pay for "bodily injury" or "property

damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

The Policy also includes an Exclusion - Punitive or Exemplary Damages that provides as follows: "The following exclusion is added to 2. Exclusions of Section I: This insurance does not apply to punitive or exemplary damages, including but not limited to those damages that may be imposed to punish a wrongdoer or to deter others from engaging in similar behavior."

<u>Declarations Sought by Nautilus</u>

For Count I of its Complaint, Nautilus seeks a declaration that it does not owe a duty to defend or indemnify World Wrecking in the underlying State Court Actions becauses: (1) the State Court Actions fail to allege an "occurrence" as defined by the Policy; (2) exclusion 2.a for "Expected Or Intended Injury" bars coverage; (3) the "Injury to Employees" exclusion bars coverage; (4) the "Contractors or Subcontractors" exclusion bars coverage; (5) exclusion 2.d for "Workers Compensation And Similar Laws" bars coverage; (6) form L266 of the Policy, "Conditional Exclusions-Wrecking, Dismantling or Salvage Operations," bars coverage; (7) form L268  of the Policy, "Wrecking, Dismantling or Salvage Contractors-Scheduled Project or Exclusion Exception," does not apply or

otherwise precludes coverage; and, (8) the "Punitive or Exemplary Damages" exclusion bars coverage for any punitive or exemplary damages.

In Count II, Nautilus seeks a declaration that it does not owe a duty to defend or indemnify World Wrecking in connection with the Gencorp Demand made in the underlying State Court Actions for the same eight reasons listed in Count I and because exclusion 2.b for "Contractual Liability" bars coverage.

In Count III, Nautilus seeks a declaration that it does not owe a duty to defend or indemnify Gencorp in connection with the underlying State Court Actions because Gencorp is not identified as a Named Insured, insured, or "additional insured" in the Policy Declarations, endorsements or policy attachments, or otherwise, and because the Policy does not include any "blanket" additional insured or similar endorsement that provides coverage to Gencorp as an "additional insured" or "insured" for the underlying State Court Actions. Nautilus also sets forth the same eight reasons from Count I as supporting non-coverage in Count III.

In their motion to dismiss, the Hale Defendants argue that this Court should exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to abstain from adjudicating the instant action, or in the alternative, stay this action until conclusion of the State Court Actions. For the reasons set forth below, the Court finds that neither abstention nor a stay is warranted.

## Discussion

The Hale Defendants argue that dismissal is proper because the State Court Action is a parallel proceeding to this one and so the Court should abstain from hearing this action under *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). See also *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). The Hale Defendants further argue that even if the proceedings are not parallel, the Court has discretion to abstain from hearing this action or stay it pending the conclusion of the State Court Action under *Scottsdale Ins. Co. v. Detco Indus., Inc*., 426 F.3d 994 (8th Cir. 2005). For the reasons discussed below, the Court finds that neither dismissal nor a stay of this declaratory action is warranted.

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, federal courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." §2201(a). The Supreme Court has ruled that this statute is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287 (internal quotations omitted). As a result, while a federal district court "[g]enerally ... must exercise its jurisdiction over a claim unless there are 'exceptional circumstances for not doing so,'" *Scottsdale*, 426 F.3d at 997 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16–19), the Declaratory Judgment Act gives federal district courts "discretion in

determining whether and when to entertain [declaratory judgment actions], even when the suit otherwise satisfies subject matter jurisdictional prerequisites[,]" if parallel state court litigation is pending. *Wilton*, 515 U.S. at 282, 289 (citing *Brillhart*, 316 U.S. at 494–95 (1942)) (concluding that "the District Court acted within its bounds in staying this action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court"). "Suits are parallel" for purposes of a district court's abstaining from hearing a declaratory judgment action due to pending state court litigation "if 'substantially the same parties litigate substantially the same issues in different forums.'" *Scottsdale*, 426 F.3d at 997 (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)).

This declaratory judgment action is not a parallel proceeding to the State Court Action. For their contention that the suits are parallel, the Hale Defendants argue that this action raises only issues of state law and that certain facts which need to be decided in order to determine whether certain requirements or exclusions of the Policy were met must also be  discovered in the State Court Action. These arguments are unpersuasive.

Nautilus is not a party to the State Court Action. Moreover, the coverage issues presented in this lawsuit are not pending in the State Court Action. In this

lawsuit, Nautilus asks the Court to determine whether they owe World Wrecking and Gencorp coverage under the contractual terms of the Policy, while the State Court Actions sound in tort. Even if the coverage questions presented in this action necessitate factual inquiries similar to those being made in the State Court Action, the fact that there may exist a few overlapping factual issues does not make this a parallel action. *See Lexington Ins. Co. v. Integrity Land Title Co., Inc.*, 721 F.3d 958, 970 (8th Cir. 2013) ("Resolution of Fidelity's tort and contract claims against Integrity would demand no interpretation of the E & O policy nor clarify for Lexington whether it owed a defense to Integrity in Fidelity's two lawsuits."). Given the fundamentally distinct parties and distinct issues raised in the lawsuits, they are not parallel proceedings.

Proceeding to the Hale Defendants' second argument, the district court's discretion with respect to declaratory judgment actions is limited when no parallel proceedings are pending in state court. *Scottsdale*, 426 F.3d at 999. This is because in those circumstances there are less-pressing interests of practicality and wise judicial administration. *Scottsdale*, 426 F.3d at 999. The Eight Circuit therefore employs a six-factor test in determining whether a district court should exercise jurisdiction over a declaratory judgment action where no parallel proceedings in state court are pending. *Id.*

The six *Scottsdale* factors considered in making an abstention determination are: (1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment action is being used merely as a device for procedural fencing--that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable. 426 F.3d. at 998 (internal citations and quotations omitted).

The first and second factors weigh heavily in Nautilus' favor. The very controversy giving rise to this federal proceeding is whether Nautilus must defend and indemnify the Insured Defendants in the State Court Action. The declaratory judgment action will settle the legal relationship, i.e. obligations, between Nautilus and the Insured Defendants, thus terminating the coverage controversy.

The third factor also weighs in Nautilus' favor. Federal courts regularly adjudicate issues of state law, particularly state contract law. The Hale Defendants offer no case law indicating that Missouri has an interest in resolving the issue of Nautilus' Policy coverage. The sole citation relied on by the Hale Defendants, *State Ex Rel. Sperandio v. Clymer*, 581 S.W.2d 377, 380 (Mo. 1979), deals with personal jurisdiction over a nonresident party, not a federal court's jurisdiction. The declaratory judgment case now before the Court presents no issues of state law, i.e. interpretation of the policy contracts, that are also pending before a state court. Missouri has no special interest in resolving the contract dispute that is now properly before this Court.

As to the fourth factor, the Hale Defendants contend that factual development on issues such as what work World Wrecking was performing and what relationship existed between Joey Hale Sr. and World Wrecking has already begun in the State Court Action. They contend that this means resolution of the issues raised in this declaratory action would be more efficient in the state Circuit Court of the City of St. Louis. This contention, as Nautilus points out, is erroneous. In *Scottsdale*, for example, the Eighth Circuit held that "in the absence of a pending parallel state court proceeding, judicial economy would best be served by deciding this [insurance coverage] action initially in the federal district court." 426 F.3d. at 999. Nautilus is not a party to the State Court Action, therefore the

coverage issues *cannot* be decided more efficiently in the state court. The fourth factor weighs in Nautilus' favor.

The fifth factor, too, weighs in Nautilus' favor. The Hale Defendants argue that there are overlapping issues of fact between the State Court Actions and this action such that this Court's failure to abstain would risk unnecessary entanglement between the state and federal court systems. Nautilus disagrees, arguing that the Court will be able to determine whether the Policy affords coverage for the tort claims alleged in the State Court Petition as a matter of law, without the need to resolve factual questions. Indeed, the Missouri Supreme Court has held that an insurer's duty to defend "hinges on facts: (1) alleged in the [underlying] petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case." *Piatt v. Ind. Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. banc 2015). The Court, which is now familiar with the facts and issues relevant to the coverage issues, finds it highly unlikely that any determinations of fact causing unnecessary entanglement will result from hearing the instant action in this Court.

Finally, regarding the sixth factor, the Court finds no procedural fencing. Nautilus' declaratory judgment action cannot be "a race for res judicata" because it is not a party to the State Court Action and the issues of contract interpretation that are to be decided in this action have no bearing on the tort claims at issue in the

State Court Action. Nor can the instant action be an attempt "to achieve a federal hearing in a case otherwise not removable." The declaratory judgment action is properly filed in federal district court subject to diversity jurisdiction. The sixth factor weighs in Nautilus' favor.

The Court finds that all six *Scottsdale* factors favor hearing Nautilus' declaratory judgment action in this Court. Accordingly, neither abstention nor a stay in the instant action is warranted.

### Conclusion

Based upon the foregoing analysis, this declaratory judgment action is not a parallel proceeding to the State Court Action and the *Scottsdale* factors do not favor abstention. The Court will not abstain from hearing or stay this action. Therefore, the Hale Defendants' motion to dismiss will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Hale Defendants' Motion to Dismiss [Doc. No. 48] is **DENIED**.

Dated this 24th  day of March, 2021.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE