**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **NAUTILUS INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 4:20CV264 HEA** |
| | ) |
| **WORLD WRECKING & SCRAP** | ) |
| **SALVAGE SERVICES, INC., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Judgment on the

Pleadings [Doc. No. 62]. All defendants except for Defendant World Wrecking &

Scrap Salvage, Inc. have filed a response in opposition to the Motion. For the

reasons set forth below, the Motion[1] is granted.

## Facts and Background

Plaintiff Nautilus Insurance Company of America ("Nautilus,") issued a

commercial general liability insurance policy to Defendant World Wrecking &

Scrap Salvage, Inc. ("World Wrecking"), Policy Number NN924824, for the

policy period of May 14, 2018, to May 14, 2019 (the "Policy"). Nautilus filed this

Declaratory Judgment action seeking a declaration that the Policy does not cover

---

[1] As explained below, the Motion is converted to a Motion for Summary Judgment.

two underlying state court lawsuits against its insured, Defendant World Wrecking, for the fatal injuries of Joey Hale and Ben Ricks, Sr.

The following facts are undisputed:

On June 4, 2018, Joey Hale and Ben Ricks Sr. ("Decedents") were working on a construction project for World Wrecking, a subcontractor, to perform demolition inside a building's freight elevator shaft on a property located at 1501 Washington Avenue, St. Louis, Missouri 63103 (the "Property"). Active Holdings Group d/b/a Gencorp Services LLC ("Gencorp") was the general contractor for demolition work at the property. Decedents were occupying a single point adjustable work basket scaffold located in a freight elevator shaft at the time of the accident. The work basket was being hoisted up the elevator shaft by a motorized wire rope pulley system when the rope failed, causing the work basket occupied by Decedents to fall down the elevator shaft. As a result of the fall down the shaft, Decedents sustained physical and emotional injuries, and ultimately died of their injuries.

There are two underlying state court lawsuits because of the events that lead to the deaths of Hale and Ricks (the "State Court Actions"). On July 17, 2019, Defendants Eniya Hale, Joey Hale, Jr., and Barbara Hope (the "Hale Defendants") filed a petition for wrongful death of their relative Joey Hale in the Circuit Court for the City of St. Louis, Missouri against World Wrecking, Gencorp, and others

2

(Case Number 1922-CC10745). On September 4, 2019, Defendants Rosetta Ricks, Shaun Ricks, Demetrius Ricks, Cherheta Ricks, Ben Ricks, Jr., and Shandosia Criss (the "Ricks Defendants") filed a petition for wrongful death of their relative Ben Ricks Sr. in the Circuit Court for the City of St. Louis, Missouri against World Wrecking, Gencorp, and others (Case Number 1922-CC11419).

In State Court Actions filed by the Hale Defendants and the Ricks Defendants, (collectively, the "State Court Petitioners"), alleged a single cause of action against World Wrecking sounding in "conduct with the specific purpose of injury." The State Court Petitioners allege that Decedents were employees of World Wrecking and that World Wrecking breached various legal duties owed to Decedents regarding protection and safety at the worksite. The State Court Petitioners allege that Gencorp was negligent in failing to provide safe equipment to Decedents and failing to prevent exposure to fall hazards during demolition. They also allege that the acts of World Wrecking were intentional, and that World Wrecking acted with the specific purpose of injuring Decedents. The State Court Actions, respectively, seek to recover all damages, including funeral expenses and pain and suffering experienced by Decedents, costs incurred, and punitive damages.

On August 30, 2018, Gencorp asserted a claim for contractual indemnity against World Wrecking that it is obligated to defend, indemnify and provide insurance for the claims made in the State Court Actions (the "Gencorp Demand").

The Policy

Nautilus issued a commercial general liability insurance policy to World Wrecking, policy No. NN924824, for the policy period of May 14, 2018, to May 14, 2019 (the "Policy"). The Policy provides $1,000,000 of liability coverage for each covered "occurrence," subject to a general aggregate limit of $2,000,000, and a $500 deductible for bodily injury and property damage liability combined.

The policy contains the following pertinent Exclusions as follows:

Form L205 (11/10), entitled Exclusion – Injury to Employees, Contractors, Volunteers and Other Workers, (hereinafter "Injury to Employees Exclusion") of the Policy states:

**EXCLUSION - INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND OTHER WORKERS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **e. Employer's Liability** of **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

   **e. Injury to Employees, Contractors, Volunteers and Other Workers**
      "Bodily injury" to:

4

**(1)** "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

**(2)** Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors

arising out of and in the course of:

    **(a)** Employment by any insured; or

    **(b)** Directly or indirectly performing duties related to the conduct of any insured's business; or

**(3)** The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractors, or independent contractor arising out of Paragraph **(1)** or **(2)** above.

This exclusion applies:

**(1)** Regardless of where the:

    (a) Services are performed; or

    (b) "Bodily injury" occurs; and

**(2)** Whether any insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** Exclusion **a. Any Insured** of **2. Exclusions** of **Section I - Coverage C - Medical Payments** is **replaced** by the following:

    We will not pay expenses for "bodily injury":

      **a.  Any Insured**

        To any insured.

All other terms and conditions of this policy remain unchanged.

The Policy defines the terms "employee," "leased worker," "temporary worker,"

and "volunteer worker" as follows:

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

5

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

The Policy also contains form L282 (07/10), entitled Exclusion-Contractors and Subcontractors, (hereinafter "Contractors or Subcontractors Exclusion") which states:

## EXCLUSION - CONTRACTORS AND SUBCONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added** to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**, **Coverage B - Personal And Advertising Injury Liability** and **Coverage C - Medical Payments**:
This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work.

All other terms and conditions of this policy remain unchanged.

Nautilus' Motion for Judgment on the Pleadings

Nautilus filed this Motion, claiming it is entitled to a Judgment on the Pleadings on Counts I and II of its Complaint, requesting a specific finding that it

6

has and had no duty to defend or indemnify World Wrecking for the claims
asserted in the State Court Actions, or for the related Gencorp Demand, because
such actions unequivocally fall within the Injury to Employees Exclusion and/or
the Contractors Exclusion. Nautilus relied exclusively on the pleadings in this
matter consisting of the Policy and State Court Actions.

World Wrecking has failed to respond to Nautilus' Motion. The Court
previously granted World Wrecking more time to obtain new counsel, and no new
counsel entered for World Wrecking nor has World Wrecking engaged in any
activity in the case. On June 22, 2021, the Court warned World Wrecking that
failure to comply with the Court's Orders to obtain new counsel would result in
sanctions, including the possibility of judgment being entered against World
Wrecking. Because World Wrecking has not responded, the Court will take its
silence as admissions to the claims made by Nautilus.

The Hale Defendants and the Ricks Defendants filed their responses in
opposition and introduced additional evidence outside the pleadings.

The Hale Defendants argue Nautilus' Motion should be denied because there
are still material issues of fact relating to the Policy, which requires additional
discovery. They also argue that Hale should be covered by the Policy because he
was not an employee of World Wrecking and a "member of the general public" as
Hale died prior to forming an employer/employee relationship with World

7

Wrecking and a worker's compensation claim was not filed for him. The Hale Defendants filed exhibits with their response outside the pleadings, including portions of World Wrecking representative Keith Hanford's deposition, which indicates Decedents were hired as "laborers" or "operators" and there was a worker's compensation claim filed for Hale, the State Court Action docket, and Hale's Wage Statement, which shows that Hale worked for and was paid by World Wrecking on several previous occasions.

The Ricks Defendants make very similar arguments to the Hale Defendants, also claiming Ricks should be covered under the Policy because Ricks never established an employee/employer relationship with World Wrecking over the past twenty years of working for them since he only filled in when he was needed. The Ricks Defendants also filed Hanford's deposition with their response.

In its reply, Nautilus contends the State Court Actions still fall within the Injury to Employees Exclusion and/or the Contractors Exclusion as both Hale and Ricks were workers hired by World Wrecking, which the additional evidence tendered, Hanford's deposition and Hale's Wage Statement, supports. Nautilus also attached copies of the amended pleadings in the State Court Actions, which both the State Court Petitioners reference in their responses but failed to provide copies. Nautilus properly recognized in its reply that if the Court considers the arguments made outside the pleadings, its Motion should be treated as one for

summary judgment. The Court chooses to consider the additional evidence, so it must convert the motion to one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

## Summary Judgment Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn*., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id*. "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts and must come

forward with specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks and citation omitted).

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). The nonmoving party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in his or her favor. *Wilson,* 62 F.3d 237, 241 (8th Cir. 1995). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197 at *3 (8th Cir. 2008).

Because "the interpretation and construction of insurance policies is a matter of law, ... such cases are particularly amenable to summary judgment." *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991).

**Missouri Law Governs**

This action was brought pursuant to this Court's diversity of citizenship jurisdiction, 28 U.S.C. § 1332, accordingly, Missouri State Law applies to the substantive issues. *Winthrop Res. Corp. v. Stanley Works*, 259 F.3d 901, 904 (8th Cir.2001) (A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state.). Under Missouri law, "the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage." *D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo. 2010). The language in an insurance contract is given its plain meaning. *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. 1997). In addition, summary judgment may properly resolve claims interpreting a contractual indemnification provision. *Nusbaum v. City of Kansas City,* 100 S.W.3d 101, 105 (Mo. banc 2003).

In deciding whether losses suffered are covered by a liability policy under Missouri law, "courts look to the allegations in the underlying complaint and compare them to the language in the insurance policy. *Reliance Ins. Co. v. Shenandoah South, Inc.,* 81 F.3d 789, 791 (8th Cir.1996)." *Stein v. State Farm Fire & Cas. Co.*, 120 F.3d 909, 910 (8th Cir. 1997); *Berry v. American States Ins. Co.*, 563 S.W.2d 514 (Mo. App. 1978). "The duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other

means, for example through summary judgment or settlement." *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 173 (Mo. 1999).

## Discussion

The Policy, specifically a commercial general liability policy, contains several exclusions that preclude coverage in certain situations, and the one at issue here is the Injury to Employees Exclusion and/or the Contractors Exclusion. Nautilus contends it has no duty to defend or indemnify World Wrecking for the claims asserted in the State Court Actions, or for the related Gencorp Demand, because the Injury to Employees Exclusion and/or Contractors or Subcontractors Exclusion bar coverage. The Court agrees.

Employer's liability exclusions, like the one in this case, serve "to draw a sharp line between employees and members of the general public." *American Family Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25, 29 (Mo. Ct. App. 2003) (internal citation omitted). The exclusion is designed to preclude injuries to employees or other types of workers, while providing coverage for injuries to members of the public. *Id.; Piatt v. Ind. Lumbermen's Mut. Ins. Co.,* 461 S.W.3d 788, 792 (Mo. 2015).

The Injury to Employees Exclusion bars coverage for, among other things, "bodily injury" to (1) World Wrecking's "employees," "leased workers," "temporary workers," "volunteer workers," statutory "employees," casual workers, seasonal workers, contractors, subcontractors, or independent contractors; or (2) any of World Wrecking's contractors', subcontractors', or independent contractors' "employees," "leased workers," "temporary workers," "volunteer workers," statutory "employees," casual workers, seasonal workers, contractors, subcontractors, or independent contractors, arising out of and in the course of (1) employment by World Wrecking or any insured; or (2) directly or indirectly performing duties related to the conduct of World Wrecking's business. Additionally, the exclusion applies "whether [World Wrecking] may be liable as an employer or in any other capacity."

The State Court Petitioners both allege in their respective petitions that Decedents were at the Property to perform demolition work; World Wrecking "acted with the specific purpose of injuring [the decedents] and other *employees*;" and World Wrecking acted "intentionally and by that, it was substantially certain that injury to *an employee* would result and this led to the injuries and death of Ben Ricks and Joey Hale" (emphasis added). The State Court Petitioners further allege that World Wrecking breached its duties and "purposefully and dangerously caused or increased the risk of injury to decedent, and was substantially certain that

injury to *an employee* would result based on its conduct in the following respects:" failing to prevent exposure to falling hazards during demolition of the Property; failing to protect from the hazard of falling; failing to ensure that either ground fault circuit interrupters or an assured equipment grounding conductor program was used; failing to ensure that the wire rope support cable, clips and structural integrity of the work basket were properly inspected; failing to ensure adequate personal arrest fall system or guardrail system was provided to Decedents; permitting Decedents to occupy a work basket that it knew or reasonably could have known was in a dangerous and defective condition; failing to ensure Decedents had received proper fall hazard training; failing to conduct an inspection of the wire cable rope on the work basket scaffold; and permitting the wire cable rope on the work basket to be in dangerous proximity to electrical wiring that was not properly grounded.

Every allegation made against World Wrecking by the State Court Petitioners is directly related to World Wrecking's *failure to provide legal duties as an employer to its employees*, which here, are Decedents. The State Court Petitioners argue that Hanford's deposition reveal that Hale and Ricks were not employees of World Wrecking, but instead members of the general public, and

additional time for discovery and amended pleadings is required.[2]  Hanford's deposition does not create a genuine issue of material fact to avoid judgment on this issue since it is still undisputed that Decedents were performing duties related to World Wrecking's operations at the time of injury. In fact, Hanford's deposition confirms both Decedents were hired as "operators" or "laborers" for World Wrecking to perform demolition work. Hanford's deposition further establishes there was a worker's compensation claim filed for Hale, even though he contends there was not one filed. Hale's Wage Statement also shows that Hale actually worked for World Wrecking on at least four occasions prior to June 4, 2018 and was paid each of those days. Additionally, Hale's Wage Statement shows an entry for work expected to be completed on the date of his death, June 4, 2018, demonstrating World Wrecking intended to pay him for his work prior to his death.

Whether Decedents are classified as employees, contractors, casual workers, or volunteer workers, or contractors of the insured, the injuries to both Decedents

---

[2] The deposition of Hanford took place on May 7, 2021, nearly two years after the State Court Actions were filed. The Ricks Defendants filed a First Amended Petition for Wrongful Death on June 3, 2021, which actually occurred *after* Hanford's Deposition, that contained no changes as to the action against World Wrecking. The last document filed in this case was Nautilus' Reply on July 26, 2021, and there has been no indication to the Court from the State Court Petitioners that any specific discovery is still required or that the pleadings in the State Court Actions have been amended.

occurred while they were employed by World Wrecking and performing work for the insured. It is clear the Injury to Employees Exclusion bars coverage.

### Conclusion

Considering all the allegations contained in the State Court Actions, the Policy, Hanford's deposition, and Hale's Wage Statement, it is clear the Injury to Employees Exclusion bars coverage. Nautilus owes no duty to defend nor indemnify World Wrecking, or the related GenCorp Demand. Nautilus is entitled therefore to summary judgment on Counts I and II.

Accordingly,

**IT IS HEREBY ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings, [Doc. No. 62], converted to a Motion for Summary Judgment, is **GRANTED**.

**IT IS FURTHER ORDERED** that Nautilus has no duty to defend World Wrecking & Salvage Services, Inc., and/or Active Holdings Group d/b/a Gencorp Services, LLC, in connection with the underlying Hale and Ricks lawsuits and/or Gencorp Demand in the Circuit Court for the City of St. Louis Case Numbers 1922-CC11419 (*Rosetta Ricks, et al., v. Active Holdings Group d/b/a Gencorp Services LLC., et al.)* and 1922-CC10745 (*Eniya Hale, et al,. v. Active Holdings Group d/b/a Gencorp Services LLC., et al.*).

**IT IS FURTHER ORDERED** that Nautilus has no duty to indemnify

World Wrecking & Salvage Services, Inc., and/or Active Holdings Group d/b/a

Gencorp Services, LLC, in connection with the underlying Hale and Ricks lawsuits

and/or Gencorp Demand in the Circuit Court for the City of St. Louis Case

Numbers 1922-CC11419 (*Rosetta Ricks, et al., v. Active Holdings Group d/b/a*

*Gencorp Services LLC., et al.*) and 1922-CC10745 (*Eniya Hale, et al,. v. Active*

*Holdings Group d/b/a Gencorp Services LLC., et al.*).

Dated this 11th day of February, 2022.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE